**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Honorable Sidney B. Brooks

In re:

FERNANDO VILLASENOR CALDERON,

Debtor.

Bankruptcy Case No. 12-23843-SBB
Chapter 7

**APPEARANCES:**

**HOWARD GOODMAN**
3515 S. Tamarac Dr.
Ste. 200
Denver, CO 80237-1430
COUNSEL FOR DEBTOR

**HARVEY SENDER**
1660 Lincoln St.
Ste. 2200
Denver, CO 80264
Chapter 7 Trustee

---

# MEMORANDUM OPINION AND ORDER ALLOWING TOOLS OF TRADE EXEMPTION

---

THIS MATTER comes before the Court on the Objection to the Debtor's Claim of Exemption filed by the Chapter 7 Trustee, Harvey Sender, on October 26, 2012 (Docket #17) and Debtor's Response thereto filed November 10, 2012 (Docket #20). Debtor is a brick mason who claimed an exemption in certain tools and equipment that are owned and used by him in his masonry business. The Trustee contends that the Debtor is not allowed a personal exemption in the tools and equipment because Debtor's wholly-owned corporation, and not the Debtor, is the proper entity that is "using and keeping" them for purposes of operating the masonry business.

Simply stated, the issue before the Court is whether a Debtor can claim an exemption for "tools of the trade" in his personal bankruptcy when the Debtor conducts his business operations through a wholly-owned corporation.

## I. BACKGROUND

On February 5, 2013, the Court conducted a non-evidentiary hearing where it took offers of proof and heard argument regarding the Trustee's Objection and the Debtor's Response. The February 5, 2013 hearing was held contemporaneously with a hearing in another case before this Court, *In re Bruno and Melinda Mary*,[1] where Mr. Sender, in his capacity as debtors' Chapter 7 trustee, had filed a similar objection to the debtors' tools of the trade exemption. In *Mary,* debtors had claimed an exemption in tools and equipment owned and used by the debtor-husband in his closely-held limited liability company, which was engaged in the business of manufacturing aircraft and helicopters for commercial and residential use. The trustee had argued that the formation of a separate business entity was fatal to the debtor's claim of a *personal* exemption in tools and equipment used for the business.

At the conclusion of the hearing on February 5, 2013, parties in each case were instructed to file legal briefs on the issue and advise the Court if an evidentiary hearing was required to resolve any factual disputes. An evidentiary hearing was not requested in either case. In this case, the Trustee filed a legal brief in support of his objection to the Debtor's claim of Exemption on April 26, 2013 (Docket #38) and the Debtor filed a Response Brief on May 9, 2013 (Docket #39).

[1] Bankruptcy case no. 12-23782-SBB, *Bruno and Belinda Mary*.

On May 9, 2013, this Court issued a ruling from the bench in the *Mary* case where the Court made findings of fact and conclusions of law regarding the debtor's entitlement to the tools of the trade exemption. The Court concluded that classification of the debtor's business as a limited liability company was not, in itself, fatal to the debtor's claim of exemption in tools and equipment that were otherwise owned by the debtor in his personal capacity. The Court found that the focus of COLO. REV. STAT. §13-54-102(1)(i) is on *ownership* of the property and the nature of its *use and keeping* in relation to the debtor's business.[2]   For reasons similar to the *Mary* case, as more fully articulated below, the Court finds that the Debtor in this case is entitled to a personal exemption in tools and equipment owned and used by him for purposes of carrying on his masonry business through his wholly-owned corporation. The Trustee's objection is overruled.

## II.    FACTS

The essential facts of the case are undisputed by the parties and the primary issue before the Court is a question of law. On April 5, 2013, parties filed with the Court a Statement of Stipulated Facts,[3] which the Court hereby adopts and incorporates into this opinion in its entirety and in all its particulars. Additionally, the Court takes judicial notice of all pleadings filed in the Debtor's bankruptcy case.

Debtor has been a brick mason for approximately twenty years.[4]   On or around January 10, 2011, Debtor incorporated his masonry business under the name "Brick Solution Masonry, Inc."

---

[2] Findings of Fact, Conclusions of Law and Order, ¶14 (Docket # 46).

[3] Stipulated Statement of Facts (Docket no. 37).

[4] *Id.* ¶11

(hereinafter "BSM").[5] Prior to BSM, Debtor had operated his masonry business under the name Villasnor Masonry, Inc.[6] BSM is a subchapter S-corporation.[7] All net profits and losses from the business flow directly to the Debtor.[8]

On June 29, 2012, Debtor filed for relief under Chapter 7 of the Bankruptcy Code. Harvey Sender was duly appointed Chapter 7 Trustee of the Debtor's case. Debtor's Schedules B and C list and claim as exempt the following tools and equipment as tools of the trade under COLO. REV. STAT. §13-54-102(1)(i): "scaffolding, portable cement mixer and hand tools" for a total value of $1,500 (hereinafter "Tools").[9] On March 5, 2013, Debtor amended his Schedule C to claim an exemption in the Tools for up to $20,000 pursuant to COLO. REV. STAT. §13-54-102(1)(i), but kept the value of the Tools at $1,500.00.[10] Debtor has owned the Tools at issue for over eighteen years.[11] Debtor uses the Tools and his own labor to generate revenue for BSM.[12] The Trustee agrees that at the time the bankruptcy was filed, Debtor was the sole owner of the Tools.[13]

---

[5] Statement of Financial Affairs, question no. 18.

[6] *Id.* (Debtor's Statement of Financial Affairs indicates that Villasnor Masonry, Inc. was in business from January 10, 2006 through January 2011).

[7] *Supra* note 3, ¶10.

[8] *Id.* ¶10.

[9] Debtor's Schedule B, question 29 (Docket #1).

[10] Debtor's Amended Schedule C (Docket 36).

[11] *Supra* note 3, ¶3.

[12] *Id.* ¶13.

[13] *See Id.* ¶12

## III. Jurisdiction

This Court has jurisdiction over the matter under 28 U.S.C. §1334(a) and (b) and 157(a) and (b) because this matter concerns the allowance or disallowance of an exemption claimed by the Debtor in property of the bankruptcy estate, which is a core proceeding under 28 U.S.C. §157(b)(2)(A) and (B).

## IV. Discussion

In this case, the Court is called upon to evaluate the Debtor's claim of exemption in Tools that he has owned for over eighteen years. The central issue is whether the Debtor is entitled to a claim of exemption under COLO. REV. STAT. §13-54-102(1)(i) for Tools that he owns in his personal capacity, but which are "used and kept" in relation to work performed through Debtor's business entity.

The State of Colorado has opted-out of the federal exemption scheme found in 11 U.S.C. § 522(d).[14] Thus, Colorado residents who file bankruptcy must use personal exemptions available under Colorado state law. Here, the Debtor has claimed as exempt Tools used by him in relation to his brick masonry business under COLO. REV. STAT. §13-54-102(1)(i), also referred to as the tools of the trade exemption.

COLO. REV. STAT. §13-54-102(1)(i) provides, in part, as follows:

> 13-54-102. Property Exempt

[14] COLO. REV STAT. §13-54-107 (2013) ("The exemptions provided in section 522 (d) of the federal bankruptcy code of 1978, title 11 of the United States Code, as amended, are denied to residents of this state. Exemptions authorized to be claimed by residents of this state shall be limited to those exemptions expressly provided by the statutes of this state.")

> (1) The following property is exempt from levy and sale under writ of attachment or writ of execution:
>
> . . .
>
> (i) The stock in trade, supplies, fixtures, maps, machines, tools, electronics, equipment, books, and business materials of any debtor *used and kept for the purpose of carrying on any gainful occupation* in the aggregate value of twenty thousand dollars;
>
> . . . .[15]
>
> [emphasis added]

The burden of proof is on the objecting party to prove that the exemption is not properly claimed.[16] If the objecting party produces evidence sufficient to rebut the presumption, "the burden of production shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is properly claimed[]."[17] Nonetheless, the burden of *persuasion* always remains with the objecting party.[18]

The Chapter 7 Trustee contends that Debtor's claim of Exemption must be denied because under COLO. REV. STAT §13-54-102(1)(i), the Tools are "used and kept" not by the Debtor, but by his legally distinct corporation, BSM.[19] It is important to note that the issue raised by the Trustee is not of ownership. The Trustee concedes that the Tools are owned by the Debtor solely

---

[15] COLO. REV. STAT § 13-54-102(1)(i) (2013).

[16] FED.R.BANKR.P. 4003(c); s*ee also*, *In re Larson*, 260 B.R. 174 (Bankr. D. Colo. 2001); *In re Coleman*, 209 B.R. 739, 741 (Bankr. D. Colo. 1997); *In re Sharp*, 490 B.R. 592, 597 (Bankr. D. Colo. 2013)(citing Hon. Barry Russell, Bankruptcy Evidence Manuel, § 301.57 (2012-13 ed.); *In re Nicholas*, 435 B.R. 622 (9th Cir. BAP 2010).

[17] *Sharp*, supra note 16 at 597.

[18] *Id.* (citing *In re Carter*, 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999)).

[19] Trustee's Brief, ¶¶ 7 and 9.

in his personal capacity.[20] The Trustee's objection is limited to the interpretation of the words "used and kept" within the text of the Colorado tools of the trade exemption statute.

A. Plain meaning of the words "used" and "kept"

**"Use":** Black's Law Dictionary (hereinafter "Black's Law") defines "use" as "[t]he application or employment of something; esp., *a long continued possession* and *employment* of a thing for the purpose of which it is adapted, as distinguished from a possession and employment that is merely temporary or occasional."[21] [emphasis added] Furthermore, Black's Law defines the term "user" as "someone who uses a thing."[22]

Merriam-Webster's dictionary (hereinafter "Webster's") defines the word "use" as "*to do something with* (an object, machine, person, method, etc.) in order to accomplish a task, do an activity, etc."[23] [emphasis added] Furthermore, Webster's defines the term "user" as "a person or thing that uses something."[24]

**"Kept":** Black's law defines "keeper" as "[o]ne who has the care, *custody*, or management of something and who usu[ally] is *legally responsible* for it."[25] [emphasis added]

---

[20] *Supra* note 3, ¶12.

[21] BLACKS'S LAW DICTIONARY 1681 (19th ed. 2009).

[22] *Id.* at 1683.

[23] MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/use (last visited October 22, 2013).

[24] *Id.*

[25] *Supra* note 21 at 947.

Moreover, Webster's defines "kept" as "a past particle of keep," which in turn is defined as "to *continue having* or holding (something): to not return, lose, sell, give away, or throw away (something)."[26] [emphasis added]

At first blush, the definitions of the words "used" and "kept" seem precise, clear and unambiguous. Nonetheless, the Trustee contends that in this case, the Tools are "used and kept" not by the Debtor, but by his business entity, BSM.

B. Case law

In order to effectuate the intent of the statute, "the Court must consider the statutory language within the context of the statute itself."[27] This Court previously examined the word "used" within the context of the Colorado tools of the trade exemption statute in its 2001 *Larson* opinion,[28] where it referenced and recognized the *"use test"* enunciated by the Tenth Circuit Court of Appeals in *In re Heape*.[29] In *Heape*, the Tenth Circuit Court had evaluated the words "used," as found in the Kansas tools of the trade exemption statute and held that "[for] tools and implements . . . [to come within] the operation of the statute . . . it is enough that *they belong to*

---

[26] *Supra* note 23 http://www.merriam-webster.com/dictionary/kept (definition of "kept") and http://www.merriam-webster.com/dictionary/kept?show=1&t=1380236179 (definition of keep) (last visited October 22, 2013).

[27] *Sharp*, supra note 16 at 598 (citing *Dillabaugh v. Ellerton*, 259 P.3d 550, 552 (Colo. App. 2011)).

[28] 260 B.R. 174, 191 (Bankr. D. Colo. 2001).

[29] 886 F.2d 280, 282 (10th Cir. 1989).

*the . . . [debtor]*, that they are *necessary and are personally used* for the purpose of carrying on his trade or business."[30] [emphasis added]

This Court noted that "the Colorado exemption statute itself imposes a 'use test' by its very terms[]."[31] The Court recognized the "use test" in context of the Colorado tools of the trade exemption statute and found that the asset at issue in *Larson*, i.e., debtors' livestock, was "not only used by the Debtors in their farming and ranching operations but was *an integral part* of those operations."[32] [emphasis added] In allowing the debtors an exemption pursuant to COLO. REV. STAT. §13-54-102(1)(i), this Court concluded that without their livestock, the debtors "would be unable to begin anew in farming or ranching." [33]

Similarly, in its 2008 *Sackett* opinion,[34] this Court examined the specific meaning of the phrase "kept for the purpose of carrying on any gainful occupation[]"[35] within the context of the Colorado tools of the trade exemption and found that "in order for this element to be satisfied, the facts and evidence before the Court must demonstrate that the [tool or equipment] is a *material* and *essential* feature to Debtor's gainful occupation. That is, a debtor's business could not be conducted without the [asset]."[36]

---

[30] *Supra* note 28 (citing *In re Heape*, 886 F.2d 280, 282 (10th Cir. 1989)(internal citations omitted)).

[31] *Id.*

[32] *Supra* note 28 at 191(citing *In re Raymond*, 132 B.R. 53 (Bankr. D. Colo. 1991) *overruled on other grounds* ("In order to claim an exemption for the Equipment, there needs to be evidence demonstrating that the Debtors, in fact, used the Equipment."))

[33] *Id.* at 189.

[34] 394 B.R. 544, 544 (Bankr. D. Colo. 2008).

[35] *Id.* at 548.

[36] *Id.*

This Court is aware of at least two additional decisions from other Judges of this District that are illustrative on the issue before the Court: the 2010 decision by Honorable Elizabeth E. Brown in *In re Prowant*[37] and the 2011 decision by Honorable A. Bruce Campbell in *In re Miller*.[38]

*Prowant* involved a claim of exemption in two pickup trucks owned by the debtor in his individual capacity, but which were being used in connection with farming operation of debtor's corporation, Prowant Land Company ("PLC"). In sustaining the debtor's claim of exemption under COLO. REV. STAT. 13-54-102(1)(i), Judge Brown noted that "the language of the statute itself . . . is limited in its application to tools that are 'used and kept' to carry on 'any gainful occupation.'"[39] Judge Brown found, however, that:

> nothing in the statute limits its application to a sole proprietorship. In fact, nothing in the language of the statute limits its application to businesses in which the debtor holds an equity interest. Thus, a tradesman who is required to use his own tools may exempt them even if he works for a company in which he holds no ownership interest.[40]

---

[37] 2010 Bankr. LEXIS 6427 (Bankr. D. Colo. Sept. 16, 2010).

[38] 2011 Bankr. LEXIS 3430 (Bankr. D. Colo. Sept. 8, 2011).

[39] *Supra* note 37, at *7.

[40] *Id.* at *7-8.

This Court finds the reasoning and conclusion articulated in *Prowant* to be logical and persuasive. The Debtor has asserted that the words "used and kept" have remained unchanged in Colorado's tools of the trade exemption laws since the First Session of Legislative Assembly of the Territory of Colorado in 1861.[41] This Court's own research reveals that the words "used and kept" have appeared in the text of Colorado's tools of the trade exemption legislature since at least as far back as the year 1864.[42] In fact, the only change made to the provision relevant here is the replacement of the words "used and kept for purpose of *carrying on his trade and business*"[43] with the words "used and kept for purpose of *carrying on any gainful occupation*."[44] In that respect, the Court finds the current, applicable exemption to be more encompassing rather than less encompassing.[45] Nothing in the text of the statute excepts from it a debtor whose occupation is conducted through his or her separate business entity.

---

[41] Debtor's Response Brief, ¶¶ 8, 9-10.

[42] Third Session of the Legislative Assembly of the Territory of Colorado, p. 100 (1864). In 1864, the exemption purportedly provided as follows:

> tools, implements, working animals, books and stock in trade, not exceeding three hundred dollars in value of any mechanic, miner, or other person not being the head of the family, *used and kept for the purpose of carrying on his trade and business*, shall be exempt from levy and sale on any execution or writ of attachment, while such a person is a *bona fide* resident of this Territory.[42]
>
> [emphasis added]

[43] *Id.*

[44] *Supra* note 15.

[45] *See Sharp*, supra note 16 at 600 (This Court's recent opinion interpreting the words "gainful occupation" to be expansive and not limited to a debtor's principal or profitable occupation.)

In *Prowant*, Judge Brown concluded that because "the debtor [wa]s the sole owner and President of PLC[,] [f]or purposes of determining the exemption, the Debtor and PLC are one and the same because any profits that are realized from PLC's business will flow to the Debtor."[46]  Similar to the debtor in *Prowant*, the Debtor in this case is the sole owner of  BSM and all net profits and losses flow from the business to the Debtor.

Contrary to *Prowant*, in *Miller*, Judge Campbell answered the same question of whether debtors could claim an exemption in property which they personally owned, but which had been used and kept in relation to their wholly-owned, separate legal entity in the negative.[47]  In *Miller*, debtors were the sole stock holders of an entity named "Reunited, Inc."  On Schedule B, debtors listed a personal ownership in a domain name called "Reunited.com."  Testimony was presented that the domain name was "critical" to the operations of debtors' corporation, Reunited, Inc. Based on that testimony, Judge Campbell concluded that the "domain name [was] 'used and kept' as 'an integral part' of the corporation's business . . . [,]"[48] and could not then be exempted by the debtors "at the expense of the creditors of th[e] bankruptcy estate, for the benefit of debtors who did not use [the domain name] themselves."[49]

This Court is not of the opinion that the mere creation of a separate legal entity renders a debtor's claim of exemption in tools otherwise owned by the Debtor – improper.   Rather, as articulated above, the focus of the inquiry is on ownership and the nature of the use and keeping of the tools and equipment at issue.  Specifically, based on definitions of the words "used" and

---

[46] *Supra* note 37 at *7.

[47] *Supra* note 38, at *5.

[48] *Id.*

[49] *Id.*

"kept" and relevant case law, the Court should answer the following questions to determine whether the Tools in dispute are being "used and kept for purpose of carrying on gainful occupation":

(1) Is debtor the legal owner of the tools or equipment?

(2) Does the debtor maintain or manage possession and custody of the tools or equipment?

(3) Does debtor personally employ the use of the tools or equipment?

(4) Are the tools or equipment material and necessary for debtor to carry on a gainful occupation?

(5) Will denying the exemption deprive the debtor of his or her fresh financial start?

Distinguishable from the *Miller* case, this Court does not have explicit evidence that BSM *is* the entity using the Tools at issue; or, more importantly, that the Debtor *is not* using the Tools at issue. To the contrary, based on the following facts, the Court finds that in this case it is the Debtor who owns, uses and keeps the Tools for purpose of carrying on his masonry business.

First, the Court observes and concludes that pursuant to the Parties' stipulations, Debtor's sole ownership of the Tools remains undisputed and unrebutted. [50]

Second, the Court finds and concludes that the Debtor is the party who has maintained possession and custody of the Tools. The parties have stipulated that the Debtor has owned the Tools at issue for almost eighteen years.[51] The Debtor only recently incorporated his business under the name BSM in 2011. Prior to BSM, from 2006 to 2011, the Debtor operated his business under the corporate name, Villasnor Masonry, Inc. There is no allegation by the

---

[50] *Supra* note 3, ¶12.

[51] *Id.* ¶3.

Trustee that the Debtor ever transferred legal ownership of the Tools to either of his business entities. It is a reasonable inference from the evidence that during the eighteen years of owning the Tools, the Debtor has continuously maintained and used them in relation to his brick masonry work. For all intents and purposes, the Debtor has had effective and exclusive legal and physical control of the Tools.

Third, the Parties have stipulated that the Debtor is the person who uses the Tools and his own labor to operate the masonry business.[52] It is the Debtor, and not BSM, who is personally using the Tools to keep the masonry business in operation. It is the skill, talent, experience and labor of the Debtor that form the bases of the brick masonry business.

Fourth, the Parties have stipulated that Debtor uses the Tools for the masonry business.[53] In fact, Debtor has owned and maintained the Tools for eighteen out of the twenty years that he has been a brick mason. It is therefore, reasonable and logical to conclude that without the Tools, Debtor will be unable to continue his masonry work. Therefore, the Tools are critical and integral to Debtor's masonry work.

Finally, the Court finds that denying the Debtor an exemption in the Tools will deprive the Debtor of a fresh financial start. In general, exemptions are integral to a debtor's fresh start.[54] Indeed, exemptions in bankruptcy can be traced back to some of the earliest bankruptcy

---

[52] *Id*. ¶13.

[53] *Id.*

[54] *See*, *e.g.*, *In re Eldridge*, 22 B.R. 218, 222 (Bankr. D. Me. 1982) ("Providing debtors the means to support themselves enables debtors to be productive members of society, enhances human dignity, and avoids increased public assistance expense and the oft-accompanying social costs. Clearly exemption statutes further an important public purpose.")

legislation of this country.[55] Without certain fundamental necessities such as food, clothing, shelter, household goods, etc., debtors cannot be expected to start anew. Nor can debtors be expected to resume work post-bankruptcy without some means of transportation and tools necessary for them to perform their jobs. Preserving a debtor's tools post-bankruptcy is therefore fundamental to facilitating the debtor's fresh financial start. Here, Debtor's Schedules and Statements reflect that profits and earnings from Debtor's masonry business are his only source of income.[56] As determined above, the Tools are integral to Debtor's masonry work. Without his Tools, Debtor's masonry work will cease and so will his earnings. Without an income, Debtor's fresh financial start will be extinguished. Hence, the Tools are critical to the Debtor's fresh start.

For the reasons stated above, the Court finds that the Tools are owned by the Debtor in his individual capacity and are used and kept *by him* for purposes of carrying on a gainful occupation, i.e., his masonry business. The fact that the Debtor uses and keeps the Tools in relation to work performed through his wholly-owned corporation, in itself, does not affect the Debtor's right to a personal exemption under COLO. REV STAT. §13-54-107 (2013).

---

[55] *See* Collier on Bankruptcy, App. Pt. 44, Vol. I, Ch. 1, section 1.2.4 (16th ed. 2013) ("The Bankruptcy Act of 1800 established exemptions for necessary apparel, bedding, and a percentage of the estate keyed to the amount of creditor distributions. The Bankruptcy Act of 1841 offered a wider range of exemptions**:** it protected more clothing, household goods, and other 'necessaries' worth up to $300. The Bankruptcy Act of 1867 exempted even more items within these categories of property, and also reflected contemporary events by exempting military arms, uniforms, and equipment. Significantly, the 1867 Act permitted debtors to avail themselves of the state law exemptions as well, so that debtors could protect a wider range of property.")

[56] *Supra* note 5, question 3 (reflecting income from "Brick Solution Masonry Inc." in the amount of $11,588 in the year 2012 and income from "Brick Solution Masonry Inc. & Villasenor Masonry (Name Change)" in the amount of $2,563 for the year 2011); *see also* Debtor's Schedule I (reflecting gross earnings from Brick Solution Masonry, Inc. as the only income being received by Debtor).

C. Debtor's Exemption and the corporate veil

The Trustee has also argued that granting the Debtor an exemption in the Tools "would allow [the Debtor] the contemporaneous benefit of the tools of the trade exemption and the corporate veil to the detriment of his creditors."[57] The Trustee contends that allowing the Debtor a personal exemption "would permit the Debtor to protect assets of BSM that creditors would normally be able to reach."[58] However, the Trustee's entire argument is premised on the erroneous presumptions that the Tools that are owned personally by the Debtor have somehow become an asset of the Debtor's corporation, BSM.

The Trustee's presumption is contradictory to the fundamental principles of corporate law and the legal doctrine of the "corporate veil," which separates the legal identity of incorporated and limited liability companies from their individual owners as legally distinct and independent; thereby protecting the assets of one entity from the creditors of another.[59] Absent any contention or evidence that the corporate veil between the Debtor and his corporation, BSM, has somehow been ignored or compromised, the Trustee's argument that allowing Debtor a

---

[57] *Supra* note 19, ¶10.

[58] *Id.*

[59] *See, e.g., supra* note 21 at 390-91 (Black's Law Dictionary's definition of "corporate veil" as "[t]he legal assumption that the acts of a corporation are not the actions of its shareholders, so that the shareholders are exempt from liability for the corporation's actions.") *see also Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1220 (10th Cir. Colo. 1997) (citing *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. Colo. 1995)) (applying Colorado law) ("Corporate veils exist for a reason and should be pierced only reluctantly and cautiously. The law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities.")

personal exemption somehow allows him to improperly protect a corporate asset is legally flawed.

## V. Conclusion and Order

Based on the facts of this case and the non-exclusive factors set forth by the Court, the Court concludes that Debtor is the proper entity that "used and kept" the Tools for purposes of carrying on his gainful occupation as a brick mason. Because the Debtor personally owns, maintains and uses the Tools, and because the Tools are integral to the Debtor's masonry business and his fresh financial start, the Court will allow the Debtor's claim of exemption.

Wherefore, the Court concludes that the Debtor is entitled to a personal claim of exemption in the scaffolding, portable cement mixer and hand tools listed on Debtor's Schedule B pursuant to COLO. REV. STAT. §13-54-102(1)(i).

IT IS THEREFORE ORDERED that:

1. The Debtor's Claim of Exemption in the Tools and Equipment is **ALLOWED**.
2. The Trustee's Objection to the Debtor's Claim of Exemption filed by the Chapter 7 Trustee, Harvey Sender, on October 26, 2012 (Docket #17) is **DENIED**.

Dated this 23rd day of October, 2013.

BY THE COURT:

Sidney B. Brooks,
United States Bankruptcy Judge